IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. CARTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DEIGO CARTER, JR., APPELLANT.

Filed March 26, 2019.    No. A-18-1114.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Sanford J. Pollack, of Pollack & Ball, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Deigo Carter, Jr., appeals from an order of the district court for Lancaster County which denied his motion to transfer his criminal case to the juvenile court. Finding no abuse of discretion, we affirm.

### BACKGROUND

Carter's date of birth is November 19, 2001. The offenses which triggered this case occurred on August 2 and 3, 2018, when Carter was 16 years old. Carter was charged with robbery; a Class II felony, use of a firearm to commit a felony, a Class IC felony, and burglary, a Class IIA felony. The cumulative maximum sentence for these charges is 120 years' imprisonment.

A hearing on Carter's motion to transfer the case to juvenile court was held on November 2, 2018. Several exhibits were received in evidence at the hearing, including the police reports from the incidents, Carter's statements, the probable cause affidavit containing allegations relating

to an attempted burglary that Carter was allegedly involved in for which no charges were filed, a Nebraska juvenile intake summary, a Nebraska probation predisposition investigation (relating to an earlier juvenile court case), Carter's education summary, and a psychological report. In addition, testimony was given by Dr. Stephanie Bruhn, a clinical psychologist; Joshua Lupher, an associate principal at Lincoln High School where Carter attended school; Latimer Perry, a juvenile probation officer assigned to Carter; and Carter's mother.

According to the police reports and Carter's statement, on August 2, 2018, Carter and two companions allegedly robbed a couple at gunpoint and assaulted the male individual. Carter is alleged to be the person who held the loaded gun which he admitted during a police interview. In the early morning hours of August 3, Carter and one of the same companions allegedly engaged in a home invasion robbery of a house where one of the companions had previously obtained drugs and where drugs, money and valuable items were located. Carter was again alleged to be the person who held the loaded gun when they broke into the home and ransacked it. Police reports reflect that multiple pairs of shoes, some clothing, and some electronics were stolen during this incident with a total loss of value of $1,330 and a total property damage value of approximately $1,000. According to Bruhn's report, Carter claims not to remember most of the alleged offenses because he smoked marijuana and took Xanax the night before.

Bruhn testified about the results of her testing of Carter, some of which shows that Carter demonstrates a moderate level of symptoms consistent with psychopathy and that he has impulsivity issues, along with anger control issues. Carter also struggles with substance abuse. On one of the tests administered, he tested in the high risk range for general community violence. Bruhn indicated that Carter would be amenable to family therapy, aggression replacement therapy, and treatment for substance abuse. Although Carter had been placed on juvenile probation in June 2018, Bruhn did not think he had yet been provided therapy or treatment. Bruhn testified that all of the recommended programs are available through the Youth Rehabilitation Treatment Center (YRTC) in Kearney. Bruhn admitted, however, that treatment could also be provided through the adult court system and that Carter poses a higher degree of violence compared to other adolescents and a danger to the public without treatment.

Lupher testified that he has a good relationship with Carter, that Carter has expressed remorse for his actions, that Lupher would continue to support Carter, and he believes that Carter could be successful at Lincoln High. Perry also testified that Carter had expressed remorse for his actions. Perry testified about the many community-based treatment options available to a juvenile placed on probation, including those recommended by Bruhn.

Carter's mother testified that he had a difficult upbringing due to an absent father and her own shortcomings as a parent. The record suggests that both Carter's mother and father have been arrested and incarcerated numerous times. Carter has on occasion lived with an uncle in Mississippi, a grandmother in Arkansas, and a grandfather in Oklahoma. According to juvenile probation records, Carter has received inadequate supervision within the home and inconsistent parenting.

Carter has had previous contacts with law enforcement for stealing and fighting, multiple referrals to juvenile court, and has participated in a diversion program. He has been adjudicated for obstructing a police officer after his mother contacted police and Carter struggled with the

police officer. He was recently adjudicated for third degree assault on a McDonald's employee, for which he was placed on juvenile probation in June 2018.

In its detailed order overruling the motion to transfer entered November 21, 2018, the district court discussed each of the factors set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016). The court highlighted the short period of time remaining for juvenile jurisdiction and rehabilitation, the seriousness of the crimes, that Carter was reportedly the leader of the criminal activity and responsible for bringing (and bearing) the loaded handgun, and that these offenses occurred while Carter was on juvenile probation. The court concluded that a sound basis exists for it to maintain jurisdiction.

Carter appeals.

## ASSIGNMENTS OF ERROR

Carter assigns that the district court abused its discretion in denying his motion to transfer the case to juvenile court.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the charges against Carter put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2018).

In the instant case, when Carter moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her

conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a) and (b).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

The district court analyzed the foregoing statutory factors in its order denying transfer to juvenile court. The court first summarized the testimony of Dr. Bruhn, noting that the various tests administered by Bruhn to Carter showed that he demonstrated a moderate level of symptoms consistent with psychopathy and struggles with anger control, impression management, impulsivity, irresponsibility, unstable interpersonal relationships, and substance use/abuse. Overall, Carter presented a high risk for general community violence according to one of the assessments administered by Bruhn. Bruhn believed that Carter would most likely be amenable to family therapy, aggression replacement therapy, and treatment for substance abuse. Although Carter had been placed on juvenile probation in June 2018, to Bruhn's knowledge, he had not yet been provided therapy or treatment. The court noted Bruhn's testimony that all of the programs she suggested are available through the YRTC in Kearney, but she also agreed that treatment could be provided through the adult court system, with no major differences between programs at the Nebraska Correctional Facility for Youth and the YRTC. Bruhn agreed that Carter's alleged crimes involved dangerous acts and a high level of violence, that he poses a higher risk of violence compared to other adolescents, and that he poses a danger to the public without treatment.

The district court summarized the acts that Carter was alleged to participate in and noted that he was the person who allegedly held the loaded handgun during both incidents. Although the court recognized that there was no direct evidence of a motive for the offenses, a reasonable

inference is that Carter's motive was to obtain money, drugs, or something of value from others by force or threat of force.

The court noted that Carter was 16 years old at the time of the alleged offenses, but had recently turned 17 years old. The other individuals involved in the offenses were either the same age or 1 to 2 years older than Carter. The court discussed Carter's previous adjudications for obstructing a peace officer and assault, together with Carter's admission that he has had previous contacts with law enforcement involving stealing or fighting. The court discussed Carter's other history of antisocial behavior, noting that Bruhn reported Carter has little involvement in prosocial activities, and has expressed negative attitudes toward authority figures. The court referred to Carter's history of running away from home, frequently fighting with others, being dishonest, and acting impulsively which, along with his substance abuse, has led to legal and interpersonal difficulties. The court also noted Carter's past diagnosis of Attention Deficit Hyperactivity Disorder and his anger management problems. The district court referenced Carter's difficult home life, chaotic family situation, and the great deal of instability he has experienced.

The district court referenced Perry's testimony that if transferred to juvenile court, Carter could continue on probation, be placed in a group home, be placed in a residential treatment facility or sent to YRTC, which is not a completely secure facility. The court found no evidence before it that there are any facilities uniquely available to the juvenile court for treatment and rehabilitation. To the contrary, the court noted the provisions of Neb. Rev. Stat. § 29-2204(5) (Cum. Supp. 2018), which allows the district court to make disposition as the court deems proper under the juvenile code instead of imposing the penalty for the crime.

In relation to the best interests of Carter and the security of the public, the court concluded that there were only approximately 24 months remaining under the juvenile court jurisdiction, and the delay for adjudication and disposition would further shorten this period. The court found it significant that at the time of these offenses Carter was already on juvenile probation, which apparently did not serve as a deterrent to Carter committing further offenses. The court referenced the information in the exhibits that Carter has been "flagged" as a possible gang member by the police department, although Carter denied any gang affiliation.

Applying the requisite balancing test, where "public protection and societal security are weighted against the practical and nonproblematical rehabilitation of the juvenile," the court found that a sound basis exists for it to maintain jurisdiction.

In our review of the record, we cannot say that the district court abused its discretion in denying Carter's motion to transfer to juvenile court and in finding a sound basis to retain jurisdiction in district court. While Carter clearly could benefit from treatment programs, the record supports that these could be accomplished through criminal court. The possibility of disposition under the juvenile code remains. See, *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018); Neb. Rev. Stat. § 29-2204.02(6) (Reissue 2016). Further, Carter's background and history, the nature of the crimes alleged involving a loaded handgun, the short duration of juvenile jurisdiction, and the need for protection of the public support the district court's conclusion.

## CONCLUSION

Finding no error in the district court's denial of the motion to transfer to juvenile court, we affirm.

AFFIRMED.