IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. MARTINEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JESUS A. MARTINEZ, APPELLANT.

Filed October 15, 2019.    No. A-19-492.

Appeal from the District Court for Lincoln County: JAMES E. DOYLE IV, Judge. Affirmed.

Patrick M. Heng, of Waite, McWha & Heng, and P. Stephen Potter, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

### INTRODUCTION

Jesus A. Martinez appeals from the order of the District Court of Lincoln County which denied his motion to transfer his criminal proceeding to juvenile court. Finding no abuse of discretion, we affirm.

### BACKGROUND

Martinez was charged in the District Court of Lincoln County, Nebraska, with first degree murder, a Class IA felony, and use of a firearm to commit a felony, a Class IC felony. The information alleged that on September 14, 2018, Martinez killed Ethan Pohlmeier in the perpetration or attempt to perpetrate a robbery. Martinez was accompanied by Brayden Turner, who has also been charged with the same crimes.

According to the police report, Martinez and Turner traveled from Grand Island, Nebraska, to North Platte, Nebraska, for the purpose of purchasing marijuana, with the intent that they would

- 1 -

not pay for it. They met Pohlmeier in a park and a scuffle arose during the exchange which led to Martinez pulling out a gun and shooting Pohlmeier. During the transaction, Pohlmeier was standing outside the passenger side of the vehicle where Martinez was sitting. When it became apparent that the marijuana was not going to be paid for, Pohlmeier apparently lunged into the car in an effort to retrieve the marijuana and maneuver the car, at which time Martinez pulled out a stolen gun and shot Pohlmeier. When Pohlmeier fell to the ground, Martinez continued to shoot him. At some time during this altercation, one of the vehicle windows broke. Martinez and Turner left the park, returned to Grand Island with the marijuana, and were not apprehended for a few weeks. In the weeks following the shooting, Martinez deleted social media accounts, disposed of his phone, buried the gun used in the incident and consumed the stolen marijuana in efforts to conceal evidence. Martinez was 16½ years old at the time of the shooting.

Martinez filed a motion to transfer to juvenile court on January 16, 2019. A hearing on the motion was held on April 3. Various exhibits were received into evidence, including the police report, an ATF firearm trace document, a transcript of jail telephone calls, records concerning the "phone dump" of Turner's cell phone, probation documents relating to Martinez, hospital emergency room records, the autopsy report on Pohlmeier, photographs of the victim, a ballistics laboratory report, the deposition of Katie Groves, the neropsychological/psychological evaluation by Colleen Conoley and her CV, and a medications list from the sheriff's office. In addition, testimony was received from Conoley and Michelle Boltz.

A review of the ATF firearm trace document reveals that the last known purchaser of the gun used in this incident was Robert Chisholm. Kaleb, Chisholm's grandson, is a friend of Martinez. Police suspect Kaleb stole the gun from Chisholm and provided it to Martinez. The ballistics laboratory report showed that the bullets found at the scene of the incident "could not be identified to nor excluded from having been fired by the" gun used by Martinez during the incident. A review of the "phone dump" records from Turner's cell phone revealed conversations between Martinez and Turner concerning efforts to repair the broken window of the car involved in the incident. Turner's phone also stopped receiving communications from Martinez's phone at the same time Martinez stated he disposed of his phone.

Transcripts of jail telephone calls between Martinez and his friends include statements where Martinez indicates he feels sorry for Turner and takes the blame for Turner's involvement. The medication records show that Martinez was offered Lexapro and Zoloft while in the Lincoln County Department of Corrections. However, the records also indicate Martinez refused the Lexapro by never getting up to take it when offered.

Katie Groves, Martinez' probation officer, testified by deposition that she would be concerned about putting someone with a murder charge in the Youth Rehabilitation Treatment Center (YRTC) in Kearney, Nebraska, which is a juvenile facility. Groves opined that, for community safety, a juvenile convicted of or charged with murder should remain in the adult system. Nebraska Correctional Youth Facility (NCYF) is a correctional facility for young male offenders convicted in the adult system that have not yet reached the age of 21 years 10 months. NCYF offers educational programs, as well as treatment for anger and depression. Groves opined that staffing and programming at NCYF would be better equipped to treat violent offenders than other facilities in the state, such as the YRTC. These opinions were based on Groves' experience and knowledge of the juvenile system.

Dr. Colleeen Conoley, a neuropsychologist, testified on behalf of Martinez concerning her evaluation, which included a review of police records, school records, various testing, interviews with Martinez' mother and sister, and three interviews with Martinez. Conoley is a registered provider for the Juvenile Justice System and has evaluated numerous juveniles in the context of transfer hearings.

Conoley testified that Martinez does not have any neuropsychological impairments and he scored in the low average range on the full-scale IQ assessment. She diagnosed Martinez with dysthymic disorder or chronic persistent depression, and marijuana use disorder. Conoley's review of Martinez' history showed somewhat regular care by mental health professionals since 2009, including various prescriptions for medications including anti-depressants. In 2009, Martinez had been diagnosed with attention deficit hyperactivity disorder (ADHD); however, Conoley's evaluation stated that current neurocognitive findings were not consistent with ADHD. Martinez admitted to frequent marijuana use for a couple of years, which Conoley indicated was enough to structurally damage a developing brain in that it affects memory storage and learning. Conoley found Martinez to have a learning disability with written expression and reading comprehension. Conoley testified that Martinez takes full responsibility for his actions and has a high level of remorse which she found unusual in a juvenile his age. She found Martinez to have high emotional maturity in that his reasoning and rational decision making is higher than expected in juveniles.

According to Conoley, Martinez scored high in treatment amenability. He has complete insight that marijuana use is his primary problem. Conoley testified that Martinez is at low risk of recidivism for future violent crimes. She characterized Martinez's actions on the night in question as "reactive violence" which is not predictive of future violence. It was significant to her that the gun only appeared after the struggle began. Conoley also found that Martinez has a low risk for dangerousness.

Conoley opined that it would be in Martinez' best interests to be transferred to juvenile court. She recommended that he first be placed in a psychiatric residential facility in order to be observed and stabilized as she felt there was a risk of suicide attempt. Then she recommended juvenile probation with multisystemic therapy, school intervention, cognitive behavior therapy, drug treatment and rehabilitation, and further education regarding cannabis. She did not believe that a secure facility was necessary while Martinez received these services and noted that his sister and her husband were willing to have him placed with them. Conoley testified that this recommended rehabilitation could be accomplished by the time Martinez turned 19 years old.

On cross examination, Conoley agreed that Martinez planned the robbery of marijuana by obtaining the name of a seller who couldn't identify him, and took the gun with him in furtherance of the plan. She also acknowledged that he was on probation for truancy at the time of this crime, and after being placed on probation, he continued to associate with inappropriate peers, miss school, smoke marijuana daily, and carry around a stolen gun. On redirect examination, Conoley explained that Martinez' probation did not include any treatment or teaching of coping skills.

The second witness at the juvenile transfer hearing was Martinez' sister, Michelle Boltz. Boltz testified that if the district court transferred the case and Martinez was placed with family, she would be willing to have Martinez live with her. Further, Boltz testified she would be willing to supervise Martinez, transport him to treatment, and help him work with the probation office.

Boltz also stated that she would make sure Martinez would not associate with friends who Martinez had engaged in criminal activity with.

Martinez' motion to transfer his case to juvenile court was denied by the district court and Martinez appeals. Further recitation of the district court's decision will be discussed in the analysis section below.

ASSIGNMENTS OF ERROR

Martinez assigns that the district court abused its discretion in denying his motion to transfer his case to juvenile court.

STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, both of the allegations against Martinez put him within the second category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2018).

In the instant case, when Martinez moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Reissue 2016):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged

unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing, and "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

We review the evidence and the district court's findings with regard to each of the following factors.

*Type of Treatment to Which Juvenile is Amenable.*

The district court, upon review of the evidence, determined that Martinez would be amenable to treatment at the Nebraska Correctional Youth Facility based on the information set forth in the deposition of Katie Groves. The district court recognized that NCYF would be preferable to the YRTC because NCYF is a more secure facility, and offers more programs than YRTC for treating depression, substance abuse, and education programming. The court noted that NCYF houses young males from early adolescence to age 21 years 10 months.

*Whether Alleged Offense Included Violence.*

The district court found that there was considerable evidence that Martinez' alleged offenses included violence. There was a physical altercation during the incident between Martinez, the car's other occupant, and the victim. Following the physical altercation, the victim was shot multiple times. The autopsy report documented six gunshot wounds and blunt force trauma to the victim's arm and knee.

*Motivation for Commission of Offense.*

The district court determined that the motivation for the crime was to commit robbery. According to the evidence presented, Martinez traveled with another person from Grand Island to North Platte to engage in a purchase of marijuana from the seller without paying. Martinez and Turner accomplished this plan and then fled from the scene, after shooting Pohlmeier. The court considered both Conoley's opinion that Martinez' motivation for using the gun was escape, as well as police reports that indicate that Martinez used the gun to avoid identification by the victim.

*Age of Juvenile and Age/Circumstances of Others Involved.*

Martinez was born in March of 2002 and at the time of the offense he was 16½ years old. The court also noted that Martinez' accomplice was almost 16 years 1 month old, and the victim was 22 years old. Further, the court recognized that Martinez' accomplice was charged with the same crimes as Martinez.

*History of Juvenile.*

The district court first looked at Martinez' criminal record, which indicated that Martinez had been cited but not yet charged for minor in possession, cited for a traffic violation, and cited for possession of drug paraphernalia. Further, police records indicated that at one time Martinez was investigated for assault but had not yet been charged. The court also noted that at the time of the offense, Martinez was on probation due to a truancy case.

The district court next looked at Martinez' medical history. The court noted that Martinez had been diagnosed with ADHD in 2009. Martinez received fairly regular care from mental health professionals from 2008 to 2017. During this time, Martinez had been prescribed a number of therapeutic drugs, including antidepressants.

The last area of Martinez' history that the district court examined was Martinez' academic history. At the time of the offense, Martinez was in the eleventh grade and had a 2.11 cumulative grade point average. Martinez had a history of truancy, including eighty-five absences in tenth grade. Martinez' school record indicated instances of failure to follow school rules. The school record also included instances where Martinez was either the victim of or witness to bullying.

*Best Interests of Juvenile.*

Regarding best interests, the district court looked to Conoley's testimony. Conoley testified that it would be in Martinez' best interests to transfer the case to juvenile court. The court noted that in Conoley's opinion, long term detention would not benefit Martinez.

*Consideration of Public Safety.*

The district court noted that if convicted, Martinez would be guilty of a Class IA felony and a Class IC felony, with a maximum sentence not greater than life imprisonment and a minimum sentence of 40 years under Neb. Rev. Stat. § 28-105.02. For a Class IC felony, the minimum sentence is 5 years with a maximum sentence of 50 years. Thus, the district court noted that if convicted, Martinez would be imprisoned into his adulthood. The district court further found that this possible imprisonment would protect public safety.

The district court also examined the nature of the offense to address public safety considerations. The district court noted that Martinez and his accomplice traveled from Grand Island to North Platte with the intent to commit robbery and that part of the plan was to bring a firearm. Although unclear as to what the firearm was intended to be used for, the district court stated that one could infer that the firearm was intended to be used for protection, coercion, escape, or to use for identity protection.

Thus, the district court concluded that the facts and inferences show that Martinez and his accomplice actively planned and carried out an activity that demonstrated lack of regard for public safety. The court reasoned that the lack of regard for public safety by Martinez and his accomplice

indicates that short term treatment or rehabilitation would be inadequate to protect the public safety.

Further, the district court emphasized that public safety concerns would be exacerbated by Martinez' efforts to hide evidence of the crime by consuming the stolen marijuana, removing evidence from the vehicle, deleting social media accounts, and destroying a cell phone used during the commission of the crime. The district court stated that these efforts "permits the inferences of callousness and lack of remorse." The district court further found that these inferences show that Martinez has "a lack of regard for the common norms and mores about the sanctity of life, a lack of appreciation and moral and law abiding behavior and failure to have or exercise a conscience."

*Juvenile's Ability to Consider Nature and Seriousness of Conduct.*

The district court looked to Conoley's evaluation which stated that Martinez has persistent depressive disorder, cannabis use disorder, and specific learning disorder. The district court also recognized that Conoley's report indicated that Martinez was part of a delinquent peer group. Further, according to Conoley's report, Martinez' risk for dangerousness was low, his sophistication and maturity was high, and his treatment amenability was high. However, the court also noted that Conoley's report stated that Martinez had a "planned and extensive criminality offender range" of middle, because he participated in planning and executing a robbery from the victim.

*Necessity of Secure Detention/Supervision Beyond Period of Minority.*

The district court found that Martinez would need to be incarcerated well into adulthood if convicted of one or both of the currently charged crimes. The court concluded that Martinez requires a secure facility and that thus, if Martinez was transferred to juvenile court, NCYF would be the best facility alternative to incarceration.

*Unauthorized Use/Possession of Firearm.*

The district court noted that a firearm was used to shoot and kill the victim. Further, Conoley stated that Martinez knew that the gun used to shoot and kill the victim was stolen.

*Existence of Court Order Under § 43-2,106.03 (Reissue 2016).*

The district court referenced that at the time of the alleged crime, Martinez was on probation for truancy in Hall County.

No specific findings were made by the district court with respect to the following factors: whether the victim agreed to mediation, the existence of a juvenile pretrial diversion program, or whether the juvenile is a criminal street gang member.

*District Court Conclusion.*

The district court analyzed the aforementioned factors and denied Martinez' motion to transfer to juvenile court.

The district court found that although a juvenile disposition may benefit Martinez, the "serious and grave nature of the charges" are more significant than the possible benefits of a juvenile disposition. Applying a balancing test upon examining and considering all of the factors, the district court concluded that "protection of the public and societal security and the necessity of

confining Martinez to secured facility well beyond the age of nineteen years if he is convicted of the crimes outweigh the possible benefits of rehabilitation efforts in a juvenile disposition."

*Did District Court Abuse Its Discretion?*

In our review of the record, we cannot say that the district court abused its discretion in denying Martinez' motion to transfer to juvenile court and finding that a sound basis existed to retain the case in district court. On the one hand, Conoley conducted a very thorough evaluation of Martinez and provided persuasive testimony about the existence of treatment options for Martinez and about his amenability to treatment within the confines of a juvenile disposition. On the other hand, the record shows that Martinez formulated a plan to purchase marijuana without paying, traveled from Grand Island to North Platte to complete the plan, took a firearm to the transaction, and shot the victim numerous times before returning to Grand Island and taking action to conceal the crime. This is a very serious crime, and if proven, Martinez would be subject to possible incarceration well beyond reaching the age of majority. Under these circumstances, we cannot say that the district court abused its discretion in denying the motion to transfer. We note that a juvenile disposition that would result in benefit to Martinez is still possible under Neb. Rev. Stat. § 29-2204.02(6) (Reissue 2016), even if tried in criminal court. See, *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018).

## CONCLUSION

Finding no error in the district court's denial of the motion to transfer to juvenile court, we affirm.

AFFIRMED.