Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/23/2018 08:12 AM CDT

In re Interest of Steven S., a child
under 18 years of age.
State of Nebraska, appellee,
v. Steven S., appellant.

___ N.W.2d ___

Filed March 23, 2018.    No. S-17-1155.

1. **Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** An appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion.

2. **Juvenile Courts: Appeal and Error.** When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

3. **Courts: Juvenile Courts: Jurisdiction: Proof.** When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court. The prosecution has the burden by a preponderance of the evidence to show why such proceeding should be transferred.

4. **Courts: Juvenile Courts: Jurisdiction.** In determining whether a case should be transferred to criminal court, a juvenile court should consider those factors set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016). In order to transfer the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

Appeal from the Separate Juvenile Court of Lancaster County: Reggie L. Ryder, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Sarah J. Safarik for appellant.

Tara A. Parpart, Deputy Lancaster County Attorney, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Colborn and Samson, District Judges.

Cassel, J.

## INTRODUCTION

Steven S. appeals an order of the separate juvenile court transferring his case to county court. We begin by settling the standard of review, which is a matter of first impression. Because of the nature of juvenile courts and the statutory provisions governing such transfers, we determine that the appropriate standard of review is de novo on the record for an abuse of discretion. Having considered the evidence, upon our de novo review, we find no abuse of discretion in the transfer. We affirm the order of the juvenile court.

## BACKGROUND

### Juvenile Petition

In September 2017, Steven and another juvenile were being transported from juvenile detention facilities to the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska. While en route, the juveniles discussed not wanting to go to Kearney. Steven freed his hand from a wrist restraint and opened the passenger door, allowing both juveniles to escape from custody. Shortly thereafter, law enforcement took them into custody without incident.

The State filed a petition in the separate juvenile court of Lancaster County charging Steven with escape. This is a Class IV felony offense.[1] The State simultaneously filed

---

[1] Neb. Rev. Stat. § 28-912(4) (Reissue 2016).

a motion to transfer Steven's case from juvenile court to county court.

TRANSFER HEARING

The juvenile court conducted a transfer hearing. Evidence showed that Steven's contacts with law enforcement dated back to 2011. He was placed on probation for disturbing the peace committed in 2011 and for criminal mischief committed in April 2012. In February 2013, a court adjudicated Steven on a charge of disturbing the peace and committed him to the Office of Juvenile Services. He received probation for criminal mischief committed in January 2015 and for an assault in April.

Over the course of Steven's involvement with juvenile court, he had multiple out-of-home placements. Lancaster County Youth Services Center (YSC) housed him for approximately 1 month, before he was placed at a group home in Iowa at the end of March 2014. Steven successfully completed the program and returned home in November. But approximately 5 months later, he was detained at YSC for an assault. At that time, Steven was also being uncooperative with his electronic monitor and with services.

In May 2015, Steven was placed at a psychiatric residential treatment facility. He ran away from that program after approximately 3 months and was "on run" for approximately 2 weeks. After being held at YSC for a few weeks, Steven was placed at a group home. After a little over 2 weeks, Steven ran away. Once detained, the State filed a motion to send Steven to the YRTC. Steven remained at the YRTC for about 7 months, until June 2016, and returned to his mother's home in Lincoln, Nebraska, after successfully completing the program.

After being home for approximately 3 months, Steven cut off his electronic monitor. He allegedly took his mother's vehicle to Omaha, Nebraska, and was on run for about 3 days. After being detained, Steven had relatively short stays

at YSC, "Cedars Shelter," and a relative's home. In December 2016, Steven was placed at a different group home in Iowa. After approximately 3 months, he again went on run. After being on run for about 1 day, Steven was located with another youth in a stolen vehicle that was stuck in mud. He was detained for some time in "Sarpy County Detention" and then transferred to YSC.

In April 2017, Steven returned to the YRTC. In August, he absconded with another youth and was on run for almost 3 weeks. He had been in detention since being apprehended, but he remained under a commitment to the YRTC.

Emily Trotter, Steven's intensive supervision probation officer since November 2015, noted that Steven did not turn himself in on any of the times that he was on run. He had an electronic monitor on three occasions and was not compliant on any of those occasions. She could not think of any additional services that could be used to help Steven be successful in his home. She explained, "I think we've offered . . . the family everything that probation has available to us at this time and it doesn't seem like it's working." She testified that the YRTC was the most structured and secure environment that probation could offer.

In September 2016, a co-occurring evaluation was performed to examine mental health and substance abuse symptoms. It stated in part:

> Overall, Steven continues to struggle with impulsivity and low frustration tolerance, which has resulted in a history of oppositional behaviors, which have led to multiple arrests and out of home placements. If Steven is not able to find ways to better regulate his emotions these behaviors are likely to continue and even worsen.

Trotter discussed a couple of matters favorable to Steven. The only time that Steven tested positive on a drug screen was when he was taking prescribed painkillers. Trotter testified that Steven consistently attended high school when he was in

the community, that he obtained good grades, and that teachers liked him. Unfortunately, due to all the times that Steven was on run, he was not on track to graduate.

Trotter also testified regarding a couple of traumatic events in Steven's life. Steven's father passed away during Steven's first commitment at the YRTC. In July 2016, a firework injured Steven's hand, causing a loss of parts of his fingers and a hearing loss.

Even after the instant escape charge, Steven continued to display problematic behavior. On September 9, 2017, he joined in a fight occurring in his housing unit. Four days later, he commented that he would continue the fight if allowed out with the youth. On September 17 and 18, Steven disobeyed staff orders. On the latter day, he received a "Major Rule Violation for Obstruction of Correctional Operations."

In October 2017, Dr. Colleen A. Conoley performed a neuropsychological/psychological evaluation on Steven. Steven's attorney requested the evaluation and sought an expert opinion on whether the case should be transferred to adult court. Trotter testified that if probation had been aware of the evaluation, she would have provided the YRTC's intake and monthly updates, as well as Steven's entire school record.

Conoley opined that Steven was amenable to treatment in the juvenile court. She stated that the correct clinical priority was treatment of Steven's post-traumatic stress disorder. She opined that it would be best to aggressively treat Steven's post-traumatic stress disorder before addressing anger and resentment issues and that "[t]he juvenile justice system has more flexibility and access to resources and medication than available through the adult system." Conoley also stated, "He continues to require resources that are better handled at the juvenile levels, including access to peers, special education, mental health providers specializing in children and adolescents, and access to medication that is unavailable within the state penitentiary system."

### Juvenile Court's Order

The juvenile court entered a comprehensive order outlining its considerations of the factors set forth in Neb. Rev. Stat. § 43-276 (Reissue 2016). The court found it "very clear that [Steven] is not willing to cooperate with treatment services and is not currently amenable to treatment." It noted that Steven's "significant and lengthy history in Juvenile Court" weighed strongly in favor of transferring the case to county court. The court recounted that multiple services had been offered to Steven and that he had been placed in multiple out-of-home placements. The court determined that Steven's history of going "on run" posed an ongoing risk to the public. It stated that Steven "seems to do whatever he wants without any regard for the consequences of how it might affect others."

The juvenile court felt that it was running out of time to help Steven and that nothing tried over the last 6 years had been successful. It reasoned:

It is very clear that [Steven] has not taken advantage of the services provided to him[,] and he has not taken steps that would likely help better regulate his emotions. In reality, quite the opposite is true and, per the evaluation, it is fair to conclude that the juvenile's behaviors have worsened and have continued.

No matter what, the Juvenile Court loses jurisdiction over [Steven] once he turns 19 years of age, which is in approximately 16 months. If he is adjudicated in Juvenile Court on the pending charge, the most restrictive thing this Court could do is re-commit him to the YRTC-Kearney, a place he has been to twice and one that clearly is not working for [Steven]. As there was no evidence presented that indicates the YRTC-Kearney has increased [its] security and structure since he escaped from there, he could very clearly run away again from there if he so chose.

The juvenile court acknowledged factors weighing in favor of maintaining jurisdiction. It recognized Steven's chaotic

upbringing, but stated that Steven had added to the chaos and had not cooperated with services and placements that were designed to help him overcome his chaotic upbringing. And it observed that Conoley recommended Steven be placed in a "treatment-group home or a [psychiatric residential treatment facility]." But in considering Conoley's evaluation, the court was troubled that probation had no involvement: "[N]o collateral information was provided by the juvenile probation office nor was the juvenile probation office even contacted by Dr. Conoley. That in and of itself calls into question the validity of her entire report, especially her recommendations."

The juvenile court queried what it could do for Steven that had not already been done. It found the answer to be clear: "[N]othing. The Juvenile Court is simply out of options." The court concluded that the State had proved by a preponderance of the evidence that the matter should be transferred to county court.

Steven filed a timely appeal from the final order granting transfer of the case,[2] and we moved the case to our docket.[3]

ASSIGNMENT OF ERROR

Steven assigns that the juvenile court erred in finding sufficient evidence to transfer his case to county court.

STANDARD OF REVIEW

The standard of review for transfer orders from juvenile court to county court or district court is an issue of first impression. The parties advance different standards.

Before considering the suggested alternatives, we make two observations. First, transfers from juvenile to "adult" court are a recent development. Prior to legislation enacted in 2014,[4] proceedings began in the county or district court. The juvenile

---

[2] See Neb. Rev. Stat. § 43-274(5) (Supp. 2017).

[3] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

[4] 2014 Neb. Laws, L.B. 464.

could file a motion asking that the case be transferred to juvenile court. In 2014, the legislation dictated that the county attorney or city attorney file the petition in the court with jurisdiction as outlined in what became codified as Neb. Rev. Stat. § 43-246.01 (Reissue 2016).[5] Second, the 2014 legislation did not provide for an interlocutory appeal.[6] Thus, we held that an order denying a transfer was not a final, appealable order.[7] Later, the Legislature amended the law to provide for an interlocutory appeal.[8] In so doing, the Legislature emphasized that these interlocutory appeals are to be expedited.[9] This is our first opportunity to review a juvenile court order granting a transfer to county court, where the matter has not proceeded to the substance of the allegations. We now turn to the parties' proposals.

The State contends that our review should be for an abuse of discretion. We have used an abuse of discretion standard when reviewing a denial of a transfer from juvenile court to tribal court under the Indian Child Welfare Act.[10] And we review a motion to transfer a pending criminal proceeding to the juvenile court for an abuse of discretion.[11] The State correctly observes that in such a situation, the court considers the same criteria under § 43-276(1).[12]

Although the considerations for transfer between adult court and juvenile court are the same, the respective prerequisites are not. When a case is filed in adult court, the adult court shall transfer it to juvenile court "unless a sound basis exists

---

[5] *Id.*, §§ 9 and 16.

[6] *Id.*, § 4.

[7] *In re Interest of Tyrone K.*, 295 Neb. 193, 887 N.W.2d 489 (2016).

[8] 2017 Neb. Laws, L.B. 11, § 1.

[9] See § 43-274(5).

[10] See *In re Interest of Tavian B.*, 292 Neb. 804, 874 N.W.2d 456 (2016).

[11] See *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016).

[12] See Neb. Rev. Stat. § 29-1816(3)(a) (Supp. 2017).

for retaining the case."[13] On the other hand, when the matter is initially filed in juvenile court, the juvenile court shall retain it "unless the court determines that a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court."[14] Due to this difference, it does not naturally follow that we should employ the pure abuse of discretion standard used in reviewing a request to transfer *from* adult court.

On the other hand, Steven urges that a de novo standard of review is appropriate. He highlights that in juvenile cases, an appellate court's review is typically de novo on the record and that the appellate court reaches its conclusions independently of the juvenile court's findings.[15] We have long held that the object of the juvenile code is corrective, to the end that the child's reformation be brought about.[16] And we have observed that a juvenile proceeding is not a prosecution for a crime but a special proceeding that serves as an ameliorative alternative to a criminal prosecution and that the purpose of our statutes relating to youthful offenders is the education, treatment, and rehabilitation of the child.[17] Moreover, the juvenile code expounds upon these purposes at length[18] and the codification of recent changes allocating jurisdiction between juvenile and adult courts[19] illustrates the Legislature's goal of favoring juvenile courts as forums for criminal offenses committed by minor children. But this does not mean that no deference should be accorded to the juvenile court's decision on a motion to transfer.

---

[13] *Id.*

[14] § 43-274(5).

[15] See, e.g., *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017).

[16] See *Laurie v. State*, 108 Neb. 239, 188 N.W. 110 (1922).

[17] See *In re Interest of Laurance S.*, 274 Neb. 620, 742 N.W.2d 484 (2007).

[18] See Neb. Rev. Stat. § 43-246 (Reissue 2016).

[19] See § 43-246.01.

In some juvenile cases, we have conducted a review de novo on the record for an abuse of discretion. We have used such a standard in reviewing a juvenile court's determination regarding (1) whether a juvenile has been denied his or her statutory right to a prompt adjudication[20]; (2) whether a juvenile's waiver of counsel was voluntary, knowing, and intelligent[21]; and (3) whether special reasons exist to split the roles of guardian ad litem and counsel for the juvenile.[22] Likewise, the Nebraska Court of Appeals has used that standard for review regarding guardian ad litem fees.[23]

We believe that is the standard of review that should be used here. In our view, it provides the proper balance for accomplishing the purposes and goals of both the juvenile code and the criminal code. At oral argument, Steven urged that transfers from juvenile to adult court be viewed as "suspect." We reject his argument and conclude that our articulation best carries out the Legislature's goal of expedited review. And we emphasize that in many, if not most, instances, oral arguments will not be necessary. Summary dispositions may frequently be appropriate.

[1,2] We therefore hold that an appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion. But we also recognize that in doing so, the juvenile court's assessment of credibility may be critical. In such circumstances, we will apply the rule that when the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[24]

---

[20] See *In re Interest of Shaquille H.*, 285 Neb. 512, 827 N.W.2d 501 (2013).

[21] See *In re Interest of Dalton S.*, 273 Neb. 504, 730 N.W.2d 816 (2007).

[22] See *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003).

[23] See *In re Interest of Antone C. et al.*, 12 Neb. App. 466, 677 N.W.2d 190 (2004).

[24] See *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016).

## ANALYSIS

[3] When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless "a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court."[25] The prosecution "has the burden by a preponderance of the evidence to show why such proceeding should be transferred."[26]

[4] Section 43-276 sets forth 15 factors for a juvenile court to consider in making the determination of whether to transfer a case to county court or district court. As noted above, the same factors are considered when determining whether to transfer a case to juvenile court. And in that context, we have said that the court need not resolve every factor against the juvenile and that there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor.[27] Rather, it is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. We apply the same reasoning in the context of a motion to transfer from juvenile court.

### Factors Weighing in Favor of Transfer

Of the 15 statutory factors to be considered, many weigh in favor of transferring the matter to county court or district court. One consideration is the type of treatment to which Steven would most likely be amenable. The evidence on this point was in dispute. Conoley, who performed the psychological evaluation on Steven, opined that Steven was amenable to treatment in the juvenile court and that "[t]he juvenile justice system has more flexibility and access to resources and medication

---

[25] § 43-274(5).

[26] *Id.*

[27] See *State v. Stevens*, 290 Neb. 460, 860 N.W.2d 717 (2015).

than available through the adult system." But Trotter, Steven's intensive supervision probation officer, felt that probation had offered Steven everything it could and that such services had not worked. This consideration dovetails with another factor weighing heavily in favor of transferring the case: Steven's previous history. His first contact with law enforcement was in 2011. Since that time, Steven has continued to engage in unlawful activity, despite his ongoing involvement with juvenile court and the multitude of services offered to him. Based on Steven's poor track record over a number of years in juvenile court, we agree with the juvenile court that Steven is not amenable to treatment in that court.

Other factors weigh in favor of transferring the case. Steven's motivation in committing the escape was to avoid returning to the YRTC. He was being returned to the YRTC after escaping from there. Ironically, the YRTC is the most secure environment that probation can offer. At the time of the escape, Steven was 17½ years old. He helped a juvenile who was 7 months younger escape with him. Consideration of public safety weighs in favor of transferring the case. Steven has gone on run a number of times and has escaped from even the most secure juvenile placement. Further, he does not appear to appreciate the nature and seriousness of his conduct. His claim to be a member of a criminal street gang is troublesome.

Whether Steven's best interests and the security of the public may require that Steven continue in secure detention or under supervision for a period extending beyond his minority also point to transferring his case. Once again, we note his 6-year involvement with juvenile court and the multiple placements and services that have not led to a positive change in Steven's behavior. If Steven remained in juvenile court, he would likely be sent to the YRTC for a third time and the juvenile court would lose jurisdiction over him when he turned 19 years old. If Steven's case were transferred to adult court, he could be placed on adult probation or he could

be incarcerated, if necessary. The evidence shows that even though Steven has successfully completed some programs, he has not reformed his behavior.

### FACTORS WEIGHING
### AGAINST TRANSFER

A few factors weigh against transfer. The escape offense did not include violence. Steven's best interests would likely be aided by remaining in juvenile court and thereby avoiding a possible felony conviction. He has not been convicted of or acknowledged use or possession of a firearm. And we are cognizant of research related to the development of the adolescent brain.

### NEUTRAL FACTORS

Some of the factors do not tip the scales in favor of juvenile court or adult court. Whether the victim agrees to participate in mediation has no application here. Whether there is a juvenile pretrial diversion program also appears largely irrelevant: Lancaster County has such a program, but nothing in the evidence leads to the conclusion that Steven would be eligible for the program. There was no evidence that a juvenile court order had been issued for Steven under Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016).

### RESOLUTION

Upon our de novo review of the record, we find no abuse of discretion by the juvenile court in transferring Steven's case to county court. Steven is now 18 years old, and the juvenile court's jurisdiction ends when he turns 19. No service offered to Steven thus far has led him to reform his behavior.

To the extent that Steven's mental health and trauma issues may be better handled at the juvenile level, we observe that a transfer to adult court does not eliminate a disposition under the juvenile code. As we recently noted, "the possibility of disposition under the juvenile code remains available

to juveniles even if their case is transferred from juvenile to criminal court."[28] A statute specifically provides:

> If the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.[29]

Further, individuals in adult court can be placed on probation with conditions related to rehabilitation of the offender.[30] And adult probation can work with an offender for up to 5 years.[31]

## CONCLUSION

Upon our de novo review of the record, we conclude that the juvenile court did not abuse its discretion in ordering that Steven's case be transferred to county court. The juvenile court's transfer order is affirmed.

AFFIRMED.

WRIGHT, J., not participating.

---

[28] *In re Interest of Tyrone K., supra* note 7, 295 Neb. at 211, 887 N.W.2d at 501.

[29] Neb. Rev. Stat. § 29-2204.02(6) (Reissue 2016).

[30] Neb. Rev. Stat. § 29-2262(2) (Reissue 2016).

[31] Neb. Rev. Stat. § 29-2263(1) (Reissue 2016).