IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GOMEZ-HERNANDEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JESUS GOMEZ-HERNANDEZ, APPELLANT.

Filed August 25, 2020.    No. A-20-242.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Lauren J. Micek for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Jesus Gomez-Hernandez (Jesus) appeals from the order of the district court for Douglas County denying his motion to transfer his criminal case to juvenile court. Finding no abuse of discretion by the district court, we affirm.

## BACKGROUND

On September 25, 2019, an information was filed in the district court for Douglas County, charging Jesus with discharging a firearm while in or in proximity of any motor vehicle at any person, dwelling, building, structure, or occupied motor vehicle--a Class IC felony; and possession of a stolen firearm--a Class IIA felony. The charges arose from an incident that occurred on August 24. Jesus was born in September 2002 and was 1 month from his 17th birthday at the time of the alleged offense. On November 12, Jesus filed a motion to transfer to juvenile court. The motion

- 1 -

was set for hearing on December 10, however, it was rescheduled three times by the court and not heard until January 24, 2020.

At the hearing, the State offered the police reports related to the incident. Jesus introduced a report of his substance abuse evaluation by Sara Batter, LICSW, LADC (prepared before the instant offense); a 2014 deposition of Colleen Conoley, Ph.D., regarding juvenile adolescent brain development; a Department of Justice article regarding intervention for serious juvenile offenders; and several emails documenting continuances in the case. In addition, the probation officer who had been supervising Jesus testified. We summarize the evidence below.

The police reports indicate that on August 24, 2019, a shooting victim was taken to the hospital with two gunshot wounds to the head. Upon examination of the vehicle the victim was transported in, a silver car, police discovered that bullets had gone through the rear windshield and also discovered two live .22 caliber rounds in the backseat of the vehicle. The driver of the vehicle identified that someone he knew as "Danger" was in the silver car at the time of the shooting. The police officers recognized the name "Danger" and noted it was a nickname for Jesus. The driver confirmed that the officer correctly identified Jesus as "Danger." The officers also noted that Jesus, the driver, and another passenger in the vehicle were gang members.

According to the police reports, the driver of the silver car indicated that there was a verbal altercation between the passengers in the vehicle and a brown truck driving behind the car. The driver told police that Jesus was seen shooting an assault rifle out of the front passenger window of the silver car and that a passenger sitting in the back of the silver car with the victim was seen holding a black handgun. After the passenger in the back of the vehicle told the driver that the victim had been shot, the driver dropped Jesus and the other passenger off at a park before taking the victim to the hospital. The police report concluded that it was possible that the victim was shot by either Jesus or the passenger in the silver car.

The Omaha Police Department placed a "locate" for Jesus after obtaining information about the incident on August 24, 2019. On August 27, officers found Jesus and two other individuals sitting in a parked car in a park after the park was closed. As Jesus exited the vehicle, police found a handgun on his seat. Police confirmed that the handgun was stolen. Jesus was booked at the Douglas County Youth Center for possession of a stolen firearm, carrying a concealed weapon, unlawful transport, possession of a firearm by a minor, discharge of a firearm, prohibited acts, and violation of park curfew.

In support of the motion to transfer, Jesus offered a substance abuse evaluation performed by Sara Batter on July, 9, 2019, prior to the incident. This report was prepared in connection with Jesus' pending juvenile court case in Douglas County. At the time of the report, Jesus was residing in the Douglas County Youth Center after he removed his ankle monitor and ran away from home. Batter noted Jesus has a history of truancy, which increases his risk with the criminal justice system. Batter noted that Jesus reported use of tobacco, alcohol, and cannabis beginning at age 16 or prior. Batter also noted that Jesus has a history of legal offenses that are alcohol related, although Jesus denied that substance use impacted his life negatively. Specifically, Batter noted Jesus' prior citations including robbery, liquor as a minor, trespass, criminal mischief, unlawful occupancy, theft by unlawful taking, and shoplifting. Batter's report noted that Jesus has a history of spending time with negative peers. Jesus denied being in a gang at the time of the evaluation. Batter diagnosed Jesus with mild cannabis use disorder and recommended Level 1 Outpatient Treatment.

Jesus also offered a 2014 deposition of Dr. Colleen Conoley, prepared for a separate case. Conoley's deposition contained discussion of adolescent brain development, specifically noting that juveniles are more likely to engage in risk-taking behavior than fully developed adults. Conoley opined that the way to modify negative teenage behavior is to replace punishment with goal-setting and to replace thrill-seeking with satisfaction from fulfilling goals.

Jesus offered an article from the U.S. Department of Justice which discussed effective interventions for both institutionalized and noninstitutionalized juvenile offenders. The article noted that for noninstitutionalized juvenile offenders, effective treatment options included individual counseling, teaching interpersonal skills, and behavioral programs. Effective treatment options for institutionalized offenders included teaching interpersonal skills, family style group homes, behavioral programs, and community residential programs.

Jorge Clemow, a juvenile probation officer who had supervised Jesus in a prior case and was currently supervising him in another ongoing juvenile probation case testified. The pending case involved adjudications for unlawful occupancy and theft by unlawful taking under $500. Due to the new charges, a motion to revoke Jesus' juvenile probation had been filed, but no action had yet been taken on it.

Clemow testified that if the present case were transferred to juvenile court, Jesus would have a detention hearing and an adjudication, after which a predisposition sentence investigation would be prepared. Depending on the seriousness of the charges, evaluations would determine what services Jesus would be offered. The court could order individual or family therapy, substance abuse treatment, electronic monitoring services, or out of home placements. Out of home placements could include foster care, group homes, psychiatric residential treatment, placement in juvenile detention facilities, or out of state placements. During his previous experiences with the criminal justice system, Jesus had electronic monitoring and tracker services, chemical dependency evaluations, and outpatient treatment. Clemow opined that if Jesus was adjudicated on the current charges, services like trackers, global positioning system monitoring, psychological evaluations, gang interventions, and group home placements could possibly be implemented. Clemow opined that if Jesus was willing to participate, there would be adequate time for rehabilitation if the case were transferred to juvenile court.

On March 16, 2020, an order was entered by the district court denying the motion. With regard to the statutory factors set forth in Neb. Rev. Stat § 43-276(1) (Reissue 2016), the court first found that Jesus would be amenable to treatment in juvenile court but also noted there are treatment options in adult court while on probation or in the event he is incarcerated. The court then found that the crime charged was extremely violent in that the alleged victim suffered a gunshot wound to the head while Jesus and his codefendant were firing shots from their vehicle at a rival gang. The court further found that there is only 18 months left for the juvenile court to have jurisdiction over Jesus. The court noted Batter's opinion that Jesus appears to be in denial regarding how his substance use has negatively impacted his life. Batter recommended that Jesus participate in outpatient treatment to address his ongoing substance use symptoms, and she indicated Jesus' willingness to follow through with that recommendation. Jesus, who was in the 11th grade during the 2018-19 school year, reported to Batter that he had skipped classes and is behind on academic credits due to poor attendance.

The court found that consideration of public safety demands retaining the case in adult court. The court concluded that Jesus' current age along with the extremely serious, violent act alleged that transfer to juvenile court is not appropriate. The court denied the motion to transfer.

## ASSIGNMENTS OF ERROR

Jesus assigns that the district court (1) abused its discretion in denying his motion to transfer to juvenile court and in determining that the State met its burden in proving a sound basis for retention in the district court, and (2) failed to schedule his motion to transfer within the required statutory period.

## STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Bluett*, 295 Neb. 369, 889 N.W.2d 83 (2016). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against Jesus put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2018).

When a defendant moves to transfer his or her case to juvenile court, the trial court is required to conduct a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276(1):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in mediation; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged

- 4 -

unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." See § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "The burden of proving a sound basis for retention lies with the State." *Id.*

*Denial of Transfer.*

Jesus argues that there are a great number of services available to him in juvenile court, including intensive family preservation, group homes, and programming at the Youth Rehabilitation and Treatment Center in Kearney, Nebraska; which higher-level services he had not yet participated in in his previous juvenile probation. Jesus asserts that the district court failed to consider or make any specific findings about the rehabilitative services available to him through juvenile court or to his amenability to such services. However, the district court specifically noted in its order that Jesus "would be amenable to treatment in juvenile court but also notes there are treatment options in adult court while on probation or in the event the defendant is incarcerated." Further, the district court's order clearly noted that it considered all of the relevant factors. The district court found the factors in opposition to transfer included that the crime was extremely violent and motivated by gang violence, that there were only 18 months remaining for the juvenile court to have jurisdiction over Jesus, that public safety necessitated keeping Jesus in adult court, that a longer probation or prison sentence in adult court could provide Jesus with more services to discourage recidivism, and that it was a gang-related offense.

Upon our review of the record, we find no abuse of discretion by the district in denying Jesus' request to transfer to juvenile court. To the extent that Jesus may be amenable to treatment options in the juvenile court, we observe that a transfer to adult court does not eliminate disposition under the juvenile code. The possibility of disposition under the juvenile code remains available to juveniles even if their case is transferred from juvenile to criminal court. *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018). Neb. Rev. Stat. § 29-2204.02(6) (Reissue 2016) specifically provides:

If the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the

penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.

The district court was tasked with conducting a balancing test, weighing public protection and societal security against the practical and nonproblematical rehabilitation of Jesus. We find no abuse of discretion in the district court's analysis or in its determination that a sound basis existed to retain jurisdiction.

*Delay in Transfer Hearing.*

Jesus argues that the district court failed to demonstrate good cause for rescheduling the motion to transfer hearing for 45 days. The emails received in evidence show that the hearing was rescheduled three different times by the district judge's bailiff. Jesus cites § 29-1816, which provides that the county or district court shall schedule a hearing on a motion to transfer to juvenile court within 15 days. Jesus concedes that the statute does not require that the hearing actually be held within 15 days. Nevertheless, he argues that there must be good cause for the continuance, which he claims the district court did not provide here. However, Jesus relies upon case law involving treatment of continuances for speedy trial purposes. The principles relating to speedy trial have no application to the current issue before us; the denial of the motion to transfer. Further, Jesus does not argue for any specific relief relating to this assigned error; he simply requests that we reverse the denial of the motion to transfer and remand for further proceedings. Because we find no abuse of discretion in the district court's refusal to transfer the case, we find no prejudice to Jesus for the delay in holding the hearing.

For the sake of completeness, we note that Jesus' motion to transfer filed on November 12, 2019, contained a notice of hearing setting the motion for December 10. Thus, the hearing was not set by Jesus to occur within 15 days of his motion. Further, Jesus did not offer any evidence to show that he objected to the court's continuances or requested the court provide reasons for the continuances. Failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Devers*, 306 Neb. 429, 945 N.W.2d 470 (2020). Therefore, Jesus has waived the right to assert that this was prejudicial error.

CONCLUSION

The decision whether to transfer a case to juvenile court rests in the discretion of the district court. Our review of the record reveals a thorough review of the factors set forth in § 43-276, and we find no abuse of discretion in the district court's decision. We therefore affirm the district court's order denying Jesus' motion to transfer.

AFFIRMED.