IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF ANFERNEE W.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF ANFERNEE W., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ANFERNEE W., APPELLANT.


Filed August 1, 2023.    No. A-23-208.


Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Douglas L. Kerns for appellant.

Patrick F. Condon, Lancaster County Attorney, and Tara A. Parpart, for appellee.


RIEDMANN, BISHOP, and ARTERBURN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

The separate juvenile court of Lancaster County transferred a juvenile's case to the county court upon motion by the State. The juvenile filed an appeal, claiming that the juvenile court abused its discretion in transferring the case. Finding no abuse of discretion, we affirm.

## II. BACKGROUND

Anfernee W., born August 2005, was arrested on February 17, 2023, and a petition was filed against him in the juvenile court. He was charged with possessing a firearm during the commission of a felony, a Class II felony; unlawful possession of a firearm by a prohibited juvenile offender, a Class IV felony; and possession of a controlled substance (methamphetamine), a Class IV felony. The charges arose from a report of a number of runaway juveniles who had checked

- 1 -

into a hotel room. When police arrived, they found a number of people in the room with open containers of alcohol. Anfernee exited from the bathroom and said his mother was there to pick him up. Officers discovered he had a juvenile detention warrant and he was taken into custody and searched. The search revealed a stolen handgun, a magazine with twelve 9mm rounds in it, a bulbous glass pipe, and a container with a bag of 0.4 grams of methamphetamine.

The State filed a motion to transfer contemporaneously with the filing of the petition. At the hearing on the motion to transfer held in March 2023, the court received into evidence several exhibits detailing Anfernee's prior criminal history. He was first adjudicated in the juvenile court in December 2019 for unauthorized application of graffiti. He was placed on 4 months' probation in January 2020. In early May, the State filed a motion to revoke probation for failing to attend school, possession of alcohol, and not following the directions of his parents and authority figures. While that motion was pending, Anfernee ran away and a bench warrant was issued. Supplemental charges were filed in June 2020 for attempted theft by unlawful taking ($0-$500), second degree criminal trespass, obstruction of a peace officer, theft by shoplifting ($0-$500), and minor in possession. A second supplemental petition was filed in July adding two counts of burglary. Anfernee was arrested, initially detained, and then released to his mother. Later that month, a third supplemental petition was filed adding charges of theft by receiving stolen property ($0-$500) and burglary. On August 17, he admitted to, and was adjudicated for, obstructing a police officer, minor in possession, and two counts of burglary. The remaining charges were dismissed.

In September 2020, the State filed a fourth supplemental petition alleging a burglary that had occurred in May. Anfernee was also charged in Butler County, Nebraska, for the offense of theft by receiving stolen property ($1,500-$4,999), which occurred in April. He was adjudicated on an attempt of that offense and the juvenile court accepted transfer of that matter in October. Later that month, Anfernee was detained and committed to the Youth Services Center after being caught in a stolen car in Lincoln, Nebraska. He was adjudicated on counts of criminal mischief, third degree assault, and theft by unlawful taking the next month. Following a detention hearing, he was released to CEDARS Crisis Stabilization Center. Anfernee ran away and a bench warrant was issued in December. Thereafter, he was ordered to be placed in the Nebraska Youth Center Group Home, but fled that facility in January 2021. Another bench warrant was issued and Anfernee was located 2 months later in South Dakota.

Upon being located in South Dakota in March 2021, Anfernee was detained in the Youth Service Center and then placed on a 15-month term of probation and placed in a psychiatric residential treatment facility. In September he was allowed to return home to his mother. However, after violating probation, he was detained at the Youth Services Center in February 2022 and ordered to remain in detention. He was committed to the Youth Rehabilitation and Treatment Center (YRTC) in April, after adjudication on the probation violation. Following his release from the YRTC, he was placed on a 6-month probation and returned home to his parents in January 2023.

On February 7, 2023, Anfernee ran away and a bench warrant was issued. On February 17, he was detained on the charges involved in the present appeal.

Anfernee's probation officer, who has supervised him since he was adjudicated in January 2020, testified as to the services Anfernee has been offered, and those are numerous. Aside from the many in-home services, he had been placed at CEDARS, the Nebraska Youth Center group

home, Lakeland Behavioral Health in Lakeland, Missouri, and finally at the YRTC in Kearney, Nebraska. He had many failures and some successes. His probation officer testified that for the last three to four months at YRTC, he was doing exceptionally well. However, she testified that there were not any other services that could be implemented that probation has not already offered.

According to the probation officer, Anfernee was diagnosed with post-traumatic stress disorder based on his trauma as a young child. He was also diagnosed with major depressive disorder. Substance abuse had not been an issue and he did not test positive for methamphetamine until February 2023. None of his prior behaviors warranted substance abuse treatment.

Upon questioning from the court, the probation officer clarified the circumstances of Anfernee's arrest in the pending case. She testified that although the initial report was of several runaway minors in a hotel room, the police report indicated the room had been rented by a 24-year-old adult and the report contained no information that any other juveniles were in the room.

Anfernee's mother testified on his behalf. She explained that although she was now sober, Anfernee grew up in a house where both of his parents were addicts and she believed this had a negative effect on Anfernee. She was surprised, however, that he was charged with possession of methamphetamine because he had a very negative attitude about that and it would be uncharacteristic of him.

In a written order, the juvenile court granted the State's motion to transfer the case to county court. In its order, the court addressed each of the factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2022) but did not specifically state whether the factor did or did not support a transfer to county court. Anfernee appeals.

## III. ASSIGNMENT OF ERROR

Anfernee assigns that the juvenile court erred in transferring his case to the county court because the evidence was insufficient to prove by a preponderance of the evidence that the case should be transferred.

## IV. STANDARD OF REVIEW

An appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion. *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018). When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id*.

## V. ANALYSIS

### 1. PRINCIPLES RELATING TO TRANSFER

Neb. Rev. Stat. § 43-246.01(2) (Reissue 2016) grants exclusive original jurisdiction to the juvenile court as to any juvenile 14 years of age or older who commits an act which would constitute a felony except for an alleged offense punishable as a Class I, IA, IB, IC, ID, II, or IIA felony. As to these offenses, § 43-246.01(3) grants concurrent jurisdiction to the juvenile court and the county or district courts. For offenses arising under § 43-246.01(2), proceedings may be

transferred from the juvenile court to the county or district court pursuant to Neb. Rev. Stat. § 43-274 (Cum. Supp. 2022).

In the present case, Anfernee was charged with two Class IV felonies and a Class II felony. Although the juvenile court has exclusive original jurisdiction over the Class IV felonies, transfer to the county or district court is permissible under § 43-246.01(2). For matters initiated in juvenile court, the county attorney or city attorney can move to transfer the proceeding to adult court pursuant to § 43-274(5).

When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court. *In re Interest of Steven S., supra.* See, also, § 43-274(5). Here, the prosecution properly moved to transfer the case to county court; therefore, we review whether the juvenile court abused its discretion in granting the motion.

### 2. TRANSFER WAS NOT ABUSE OF DISCRETION

When the State moved to transfer Anfernee's case to adult court, the juvenile court conducted a hearing pursuant to § 43-274(5) and considered the following factors set forth in § 43-276(1):

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending juvenile offender's case to criminal court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *In re Interest of Steven S.*, 299 Neb. 447, 457, 908 N.W.2d 391, 398 (2018). The court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. *Id.* The prosecution "has the burden by a preponderance of the evidence to show why such proceeding should be transferred." § 43-274(5).

Anfernee claims the juvenile court conducted an "erroneous and incomplete analysis" of the relevant factors. Brief for appellant at 26. We set forth his arguments as to those factors.

### (a) § 43-276(1)(a) - Type of Treatment Juvenile Would Most Likely Be Amenable To

The juvenile court found that Anfernee has had increased filings and adjudications for both misdemeanor and felony offenses since coming under the court's jurisdiction in 2019. It recognized the multiple services juvenile probation had provided and stated that the probation officer had opined "that all options available that would have a reasonable likelihood of success through a juvenile court adjudication have been exhausted."

Anfernee takes issue with the court's interpretation of the probation officer's opinion. He claims that she testified that 18 months remained before Anfernee's minority ended, that he had expressed his willingness to return to a level of service similar to the YRTC, and that such therapeutic services would be more beneficial to him than incarceration without such services. While that is an accurate representation of her testimony on cross-examination, it does not negate her testimony that "when it comes to juvenile – the services that we have, we've – we've tried everything" or her opinion that there were no other services different than what probation has already offered. And while therapeutic services are more beneficial than incarceration without such services, there was no indication that therapeutic services would be unavailable if the case was transferred to adult court.

Based upon Anfernee's escalating behaviors despite the multitude of services and placements offered by juvenile probation, it is clear that he has not been amenable to such services. Simply because services are available does not mean the juvenile is amenable to them. See *State v. Leroux*, 26 Neb. App. 76, 916 N.W.2d 903 (2018) (in considering motion to transfer, it is important to consider defendant's individual amenability to treatment). This factor supports a transfer to adult court.

### (b) § 43-276(c) - Motivation for Commission of Offense

The juvenile court found there was no evidence to determine Anfernee's motivation for the offense. Anfernee claims the court erroneously failed to consider the negative impact having an addicted father had on him. However, the Supreme Court has held in cases involving motions to transfer a case from adult court to juvenile court that "factors that are considered 'neutral' or 'not applicable' are equivalent to factors that favor transfer because § 43-276 starts with the presumption that the case should be transferred [to juvenile court]; the court's determination thereafter is whether other factors provide a sound basis for retention." *State v. Cardenas*, 314 Neb. 544, 561, 990 N.W.2d 915, 928 (2023).

In a motion to transfer a case from juvenile court to adult court, the burden is upon the State to prove by a preponderance of the evidence that the case should be transferred. Where the evidence is neutral, or the factor not applicable, the State has failed to meet its burden. Absent evidence of motivation, this factor does not weigh in favor of transfer.

### (c) § 43-276(d) - Age of Juvenile and Others Involved

The juvenile court noted that Anfernee was 17½ years old and that he was found in a room rented by a 24 year old adult, in the presence of other adults, and that he was also "on the run."

Anfernee claims that the court gave undue weight to the evidence of the age of the other persons when there was also evidence that many juvenile runaways had been in the room. He also claims that "it is unclear what bearing the ages of the other occupants of the room have on the conduct of [Anfernee]." Brief for appellant at 22.

When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Jorge A.*, 31 Neb. App. 896, 990 N.W.2d 560 (2023). Furthermore, the probation officer testified that it was "word-of-mouth that other juveniles [] may have been there," whereas the police reports set forth the ages of specific individuals and they were over the age of 18. We find no error in the court's reliance upon the police reports in making this finding of fact.

Regarding Anfernee's argument that it is unclear what bearing the ages of the other occupants have, § 43-276(1)(d) specifically requires consideration of this information. The police report indicates a 24 year old had rented the room and a number of people above the age of 19 years old were present in the hotel room at the time of Anfernee's arrest. This indicates that Anfernee was engaging in his criminal behaviors while associating with adult counterparts and not with other juveniles. This factor, along with Anfernee's age, supports a transfer to adult court.

### (d) § 43-276(e) - Previous History of Individual

The juvenile court recounted that Anfernee has been adjudicated on eight misdemeanor counts and three felony counts since coming under the court's jurisdiction in 2019. It further observed Anfernee's various placements and the number of times he absconded from them. Anfernee argues that the court failed to address why his history in juvenile court weighs in favor of transfer to adult court.

Anfernee's prior history in juvenile court proves this incident is not merely a misstep for an otherwise law abiding youth. It shows that he has engaged in a number of unlawful acts and reflects that despite his numerous interactions with the juvenile court, his conduct not only continues, but escalates. Moreover, based upon the number of bench warrants issued, it reveals a pattern of absconding from placements designed to provide needed treatment. Although not iterated by the juvenile court, this factor undoubtedly supports the State's motion to transfer.

### (e) § 43-276(f) - Best Interests of Juvenile

The juvenile court stated that it would be in Anfernee's best interests "to engage in and complete a rehabilitative program such that he no longer would pose a risk to public safety." Anfernee notes that the court failed to state whether this program would occur in juvenile or adult court but that according to his probation officer, the juvenile court would be able to order such program.

While it is true the juvenile court could order a rehabilitative program, that does not mean Anfernee would be amenable to it. In the 3 years that Anfernee has been offered services, he has failed to turn his life around. We agree it would be in Anfernee's best interests to complete a rehabilitative program to eliminate his threat to public safety, but based upon the evidence, this appears to be best done under the jurisdiction of adult court.

### (f) § 43-276(g) – Consideration of Public Safety

Anfernee argues that the juvenile court failed to consider that his most recent offenses were uncharacteristic of him and implies that this somehow negates the risk he poses to the public. Although Anfernee may not have had a prior history of drug use or an extensive history of violent offense, being in possession of methamphetamine and a firearm when prohibited to possess one, does, indeed, raise concerns for the public's safety.

### (g) § 43-276(h) – Ability to Appreciate Seriousness of Conduct

The juvenile court determined that Anfernee was ambivalent to the nature and seriousness of his conduct. Anfernee contends this is contrary to the probation officer's observations of him. However, the juvenile court based its determination upon Anfernee's repeat offenses despite him having been under the court's jurisdiction for an extended period of time. His track record supports the court's factual finding.

### (h) § 43-276(i) – Juvenile's Best Interests Versus Public Security

The juvenile court determined that when balancing Anfernee's best interests with that of public security, it may require Anfernee to be under supervision for a period extending beyond his 19th birthday. Anfernee argues that "the security of the public could reasonably be maintained by retaining jurisdiction" until he reaches 19 years of age. Brief for appellant at 24.

The record does not support a likelihood that Anfernee can be rehabilitated by his 19th birthday; therefore, the court did not err in determining that the security of the public may require Anfernee to be under supervision for a period extending beyond his minority.

### (i) § 43-276(l) – Use or Possession of Firearm

The juvenile court observed that Anfernee admitted to being in possession of a firearm at the time of his arrest, and that it was stolen. Similar to his argument regarding § 43-276(g), Anfernee contends this was an anomaly and the court failed to consider that.

Anomaly or not, whether the juvenile has acknowledged unauthorized possession of a firearm is relevant in considering whether the case should be transferred to adult court. Again, it is indicative of the escalating behaviors in which Anfernee was engaging and supports a transfer to adult court.

### (j) § 43-276(o) – Other Relevant Matters

The juvenile court found no other relevant matters to consider; however, Anfernee argues it should have considered his efforts at rehabilitation, his mental health, and his juvenile propensities. Contrary to Anfernee's arguments, the court did consider the rehabilitative efforts that have been made, albeit in conjunction with other factors outlined in § 43-276. And a review of those efforts supports a conclusion that juvenile probation has been unsuccessful.

Our review of the record reveals a troubled young man who has been under the supervision of the juvenile court since 2019. At the time of the transfer hearing, Anfernee was 17½ years old. Despite an array of services and placement at every level of supervision available to juvenile probation, Anfernee continues to rebel and the offenses have become more serious. In balancing public protection and societal security against the practical and nonproblematical rehabilitation of

Anfernee, we find that a preponderance of the evidence supports a transfer of Anfernee's case to adult court.

## VI. CONCLUSION

We conclude that the juvenile court did not abuse its discretion when it granted the State's motion to transfer the case to county court. We therefore affirm the order of the juvenile court.

AFFIRMED.