Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/03/2020 08:27 AM CST

- 44 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

In re Interest of William E., a child
under 18 years of age.
State of Nebraska, appellee, v.
William E., appellant.

___ N.W.2d ___

Filed October 27, 2020.    No. A-20-316.

1. **Courts: Juvenile Courts: Jurisdiction: Appeal and Error.** An appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion.

2. **Juvenile Courts: Appeal and Error.** When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

3. **Courts: Juvenile Courts: Jurisdiction.** When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court. The prosecution has the burden by a preponderance of the evidence to show why such proceeding should be transferred.

4. **Courts: Juvenile Courts: Jurisdiction: Public Health and Welfare.** Neb. Rev. Stat. § 43-276 (Supp. 2019) sets forth 15 factors for a juvenile court to consider in making the determination of whether to transfer a case to county court or district court. The same factors are considered when determining whether to transfer a case to juvenile court. The court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile.

5. **Courts: Juvenile Courts: Jurisdiction.** While a review of all of the factors is not required, it is preferable that a trial court or a juvenile

- 45 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

court refer to all the statutory considerations set forth in Neb. Rev. Stat. § 43-276 (Supp. 2019) in its order.

6. ____: ____: ____. In regard to the "best interests of the juvenile," per Neb. Rev. Stat. § 43-276(1)(f) (Supp. 2019), every juvenile's best interests would be better served by attempting rehabilitation in the juvenile court system rather than being sentenced to a term of imprisonment in the adult corrections system.

7. **Courts: Juvenile Courts: Jurisdiction: Public Health and Welfare.** It is not a matter of the quantity of factors favoring retention or transfer of a juvenile offender's case. Rather, the test requires consideration of all the factors in light of the evidence presented, followed by a balancing of (1) the factors which support retaining the case in the juvenile court for the practical and nonproblematical rehabilitation of the juvenile against (2) the factors which support transferring the case to county or district court in the interest of public protection and societal security.

8. ____: ____: ____: ____. A trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated.

9. **Courts: Juvenile Courts: Jurisdiction.** The trial court's or juvenile court's decision regarding the transfer of a juvenile offender's case carries the consequences that if the decision is wrongly made, the court has either missed an opportunity to rehabilitate a juvenile outside the negative influences of adult incarceration or failed to adequately incarcerate a potentially dangerous juvenile who will go on to commit further violent crimes.

Appeal from the County Court for Adams County: MICHAEL O. MEAD, Judge. Reversed and remanded for further proceedings.

Kelsey Helget, Assistant Adams County Public Defender, for appellant.

Cassie L. Baldwin, Deputy Adams County Attorney, for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

William E. appeals an order of the county court for Adams County, sitting as a juvenile court, which transferred his case

- 46 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

to county court. Based upon our de novo review, we conclude the juvenile court abused its discretion in granting the transfer of the case to county court. We therefore reverse the juvenile court's order granting the State's motion to transfer the case to county court, and we remand the cause for further proceedings in juvenile court.

## BACKGROUND

On April 1, 2020, the State filed a petition in the county court for Adams County, sitting as a juvenile court, alleging William was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(2) (Reissue 2016) because he had committed the offense of third degree domestic assault against a pregnant woman, a Class IV felony offense. The victim was his girlfriend. William was 17 years old at the time of the offense. The State simultaneously filed a motion to transfer William's case from juvenile court to county court.

The juvenile court conducted a transfer hearing. The State offered three exhibits into evidence, as well as the testimony of Mikki Schoone, a child and family services specialist with the Nebraska Department of Health and Human Services.

Schoone testified that William was born in July 2002, making him 17 years old at the time of the hearing. He was placed in the State's custody on March 30, 2020, and Schoone conducted a safety assessment, which was offered into evidence as exhibit 3. Schoone testified that William's mother lives in El Salvador and that his father is deceased. William had no legal guardian when he was placed in the State's custody. Schoone learned that there was guardianship paperwork prepared for William's aunt to become his legal guardian, but the paperwork had not been filed. William had been living with his pregnant girlfriend. The age of the girlfriend is unclear from the record. Schoone testified that William's girlfriend was 20 years old, but exhibit 2 indicates she was 23 years old at the time of the incident.

- 47 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

Schoone testified that William was not enrolled in school and had not been enrolled in high school since September 2019. At that time, William's uncle "signed him out," telling the school that William was going to work. Schoone believed that William was employed at the time of the hearing, working for different roofing companies. The only prior law violation Schoone found was a failure to have an operator's license on him.

The safety assessment, exhibit 3, states that a Hastings, Nebraska, police officer informed Schoone that William was arrested for third degree domestic assault after his pregnant girlfriend went to a hospital with a broken nose. William and his girlfriend had been arguing, and he pushed her on the bed. The girlfriend then grabbed William's phone and broke it. William then pushed her down and started punching her in the face.

Exhibit 1 was a juvenile intake summary prepared by a probation officer, documenting her intake of William on March 30, 2020, after he was taken into custody. William told her that he had been living with his girlfriend for 2 weeks and that neither he nor his girlfriend were employed at the time. Prior to living with his girlfriend in Hastings, he lived with his aunt in Schuyler, Nebraska.

In regard to the alleged assault, the probation officer stated that she was told that William's girlfriend, who was 15 weeks pregnant, went to the hospital to be examined and had a bloody nose. William's girlfriend had reported to an officer that William had been angry about her contacting an old boyfriend, so he was outside talking to another woman. William's girlfriend reportedly got mad and broke William's phone, which then angered him. William allegedly grabbed his girlfriend's throat, pushed her on the bed, and punched her in the face.

Exhibit 2 was an "Affidavit of Warrantless Custody of Juvenile," prepared by an officer of the Hastings Police Department after he took William into custody. The officer stated in the affidavit that he spoke with William's girlfriend at the hospital after the alleged assault and that she told him

- 48 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

William had been talking to another woman on his phone and she told him to go to bed. William started getting aggressive with her and "was cussing at her, calling her vulgar names." William grabbed her by the neck and pushed her on the bed, so she scratched him on the arm to get him off. She then took William's phone and broke it. William got mad, threw her on the bed, and punched her in the face about four times.

Exhibit 2 also stated that the officer spoke with William, who agreed that his girlfriend had been mad at him for talking to another woman on the phone. His girlfriend then took his phone and broke it. William told the officer that his girlfriend started pushing and hitting him, so he hit her back.

The officer further stated in exhibit 2 that William's girlfriend's nose was swollen and was starting to bruise. She also had a bruise on her left breast that she stated William caused a couple days earlier. William had a scratch on his left forearm approximately 4 inches long.

The juvenile court entered an oral pronouncement from the bench granting the State's motion to transfer the matter to county court. The court subsequently entered a journal entry granting the State's motion.

## ASSIGNMENT OF ERROR

William assigns that the juvenile court erred in finding that the State presented sufficient evidence to support a decision to transfer his case to county court.

## STANDARD OF REVIEW

[1,2] An appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion. *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018). When the evidence is in conflict, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

- 49 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

ANALYSIS

[3] When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court. *Id.* See Neb. Rev. Stat. § 43-274(5) (Supp. 2019). The prosecution has the burden by a preponderance of the evidence to show why such proceeding should be transferred. *Id.*

[4] Neb. Rev. Stat. § 43-276 (Supp. 2019) sets forth 15 factors for a juvenile court to consider in making the determination of whether to transfer a case to county court or district court. The same factors are considered when determining whether to transfer a case to juvenile court. *In re Interest of Steven S., supra.* The court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. See *id.* Rather, it is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.*

The 15 factors set forth in § 43-276(1) for the court to consider are as follows:

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so,

- 50 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

William argues that the State failed to produce sufficient evidence to meet its burden to show that the case should be transferred to county court. Before addressing the evidence presented by the State and the factors set forth above, we first note that the court made a brief oral pronouncement from the bench following a hearing that lasted only 24 minutes, stating the factors it found to weigh in favor of transferring the case to county court. It then entered the following journal entry: "Court finds that, based on JV43-276, no treatment available and this offense was violent, public safety as well, and old enough to appreciate serious [sic] of the offense."

[5] We also note there were three exhibits offered and received into evidence, but the record does not indicate when the court would have reviewed those exhibits prior to its oral pronouncement at the end of the hearing. The court did not explain in its oral pronouncement or its journal entry why it found certain factors favored transferring the case to county court, nor did it review all the factors. We would encourage courts to take the time to review the evidence and then make a more thorough written order analyzing the relevant factors as set out in § 43-276, which ensures a meaningful review by an appellate court. While a review of all of the factors is not required, it is preferable that a trial court or a juvenile court refer to all the statutory considerations set forth in § 43-276 in its order. See *State v. Tyler P.*, 299 Neb. 959, 911 N.W.2d 260 (2018).

- 51 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

We now turn to the question of whether the State met its burden to prove by a preponderance of the evidence why the proceeding should be transferred to county court. See *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018).

*Factors Favoring Transfer.*

When the juvenile court orally pronounced its decision from the bench, it stated that it found 6 of the 15 factors set forth in § 43-276(1) weighed in favor of transferring the case: the type of treatment the juvenile would be amenable to, § 43-276(1)(a); the alleged offense included violence, § 43-276(1)(b); the motivation for the commission of the offense, § 43-276(1)(c); the age of the juvenile, § 43-276(1)(d); public safety, § 43-276(1)(g); and the juvenile's ability to appreciate the nature and seriousness of his conduct, § 43-276(1)(h).

We agree with the juvenile court in regard to three of the six factors it found favored transferring the case. First, we agree that the alleged offense included violence. See § 43-276(1)(b). William does not dispute that third degree domestic assault of a pregnant woman is a crime of violence. The evidence showed that William grabbed his girlfriend by the neck, pushed her onto the bed, and punched her in the face about four times. William admitted to hitting her. This factor favors transferring the case to county court.

Second, we agree with the court that "the motivation for the commission of the offense" factor weighed in favor of transferring the case. See § 43-276(1)(c). William's motivation for the offense was based on his girlfriend's breaking his phone during a dispute about William talking to another woman on the phone. His reaction was to push his pregnant girlfriend onto the bed and punch her in the face multiple times.

Third, we agree with the court that William's age favored transferring the case. See § 43-276(1)(d). At the time of the hearing in April 2020, William was 17 years 9 months old, giving the juvenile court jurisdiction over William for just over a year before he turned 19 years old.

- 52 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

The State also contends that another factor weighed in favor of transferring the case to county court, with which we agree: "such other matters as the parties deem relevant to aid in the decision." See § 43-276(1)(o). William was living as an adult at the time of the alleged offense. His mother lives in El Salvador, and his father is deceased. Further, he had no guardian providing care for him. He was living independently as an adult with his girlfriend, who was at least 20 years old and pregnant with William's child. William was not enrolled in school, and Schoone believed he was working. We agree that these are appropriate and relevant considerations.

*Factors Favoring Retention.*

We disagree with the juvenile court in regard to the three other factors it found supported transferring the case, and we find that those factors actually favor the juvenile court's retaining the case. Those factors are: the type of treatment the juvenile would be amenable to, § 43-276(1)(a); public safety, § 43-276(1)(g); and the juvenile's ability to appreciate the nature and seriousness of his conduct, § 43-276(1)(h).

First, in regard to "[t]he type of treatment such juvenile would most likely be amenable to," the juvenile court stated that there would not be adequate treatment available to William in the juvenile court. See § 43-276(1)(a). The court did not explain how it arrived at this conclusion, and there was no evidence presented to support it. There was no evidence presented as to what type of treatment William would or would not be responsive to. He had never been involved in the juvenile system before, so there was no indication as to how he would respond to services and programs offered in the juvenile system. There was no evidence as to what type of juvenile services existed and why those services would not be available or would not work for William, and no evidence was presented to show that William could not be rehabilitated by the time he turned 19 years old.

- 53 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

Second, we find that the "public safety" factor weighs in favor of the juvenile court's retaining the case. See § 43-276(1)(g). Again, the court did not explain its reasoning for coming to the opposite conclusion. There was no evidence presented by the State to show that William posed a public safety risk. The incident at issue arose from a domestic dispute between him and his girlfriend; there was no indication that the public was at risk of harm. In addition, exhibit 1 showed that the results of a scoring tool used by probation "indicated release the youth without restriction," indicating William did not pose a safety risk.

Third, in regard to "the juvenile's ability to appreciate the nature and seriousness of his or her conduct," there was no evidence presented to show that William could or could not appreciate the nature and seriousness of his conduct. See § 43-276(1)(h).

In addition to the three factors discussed above, there are other factors which favor retention by the juvenile court. The "previous history of the juvenile" factor, see § 43-276(1)(e), weighs in favor of retention. There was no evidence that William had any criminal convictions or that he had ever been adjudicated previously in juvenile court. The only prior law violation William had was a failure to have an operator's license on him. In addition, there is no evidence that "[William] has been convicted of or has acknowledged unauthorized use or possession of a firearm," see § 43-276(1)(l), or that he is a "criminal street gang member," see § 43-276(1)(n).

[6] In regard to the "best interests of the juvenile," § 43-276(1)(f), as this court has recently stated, every juvenile's best interests would be better served by attempting rehabilitation in the juvenile court system rather than being sentenced to a term of imprisonment in the adult corrections system. See *State v. Esai P.*, 28 Neb. App. 226, 942 N.W.2d 416 (2020). And as previously pointed out, there is no evidence to indicate William would not be amenable to rehabilitation in the juvenile court system.

- 54 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

There was also no evidence presented in regard to "whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose," see § 43-276(1)(i). The State did not show that William would require secure detention or supervision for a period extending beyond his minority. As previously stated, there was no evidence that 1 year would not be enough time for William to be rehabilitated in the juvenile system.

The remaining factors that we have not discussed are not present and are neutral: "whether the victim or juvenile agree to participate in restorative justice," see § 43-276(1)(j); "whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07," see § 43-276(1)(k); and "whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03," see § 43-276(1)(m).

*Balancing Public Safety Against*
*Rehabilitation of Juvenile.*

[7-9] As previously stated, it is the State's burden by a preponderance of the evidence to show why such proceeding should be transferred. The State's evidence focused primarily on the incident at issue, rather than the factors set forth in § 43-276(1). Accordingly, the evidence only supports a few factors that weigh in favor of the State's motion to transfer the case to county court. However, it is not a matter of the quantity of factors favoring retention or transfer. Rather, the test requires consideration of all the factors in light of the evidence presented, followed by a balancing of (1) the factors which support retaining the case in the juvenile court for the practical and nonproblematical rehabilitation of the juvenile against (2) the factors which support transferring the case to county or district court in the interest of public protection and societal security. See *State v. Esai P., supra.* In other words, "This means that a trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's

- 55 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF WILLIAM E.
Cite as 29 Neb. App. 44

safety in the event that rehabilitation fails or requires more time than anticipated." *State v. Leroux*, 26 Neb. App. 76, 118, 916 N.W.2d 903, 929 (2018). The trial court's or juvenile court's decision carries the consequences that if the decision is wrongly made, we have either missed an opportunity to rehabilitate a juvenile outside the negative influences of adult incarceration or failed to adequately incarcerate a potentially dangerous juvenile who will go on to commit further violent crimes. See *id.*

In this instance, the juvenile court failed to conduct the balancing test described above. Our review of the record reveals that the State failed to present any evidence that William could not be successfully rehabilitated before reaching age 19, despite the fact that he was almost 18 years old at the time of the transfer hearing. William has not been involved with the juvenile system before, so there was no indication that William would not be amenable to juvenile services. In addition, based on the evidence presented, William did not pose a public safety risk. He had no prior criminal history, no prior juvenile adjudications, and no history of violent behavior, other than the present offense. Accordingly, there was insufficient evidence for the juvenile court to properly weigh William's practical and nonproblematical rehabilitation under the juvenile court's jurisdiction against those factors favoring transfer to adult court in the interest of public safety and protection. Absent such evidence and consideration, we must conclude the juvenile court abused its discretion in granting the transfer of the case to county court.

## CONCLUSION

For the reasons set forth herein, we reverse the juvenile court's order granting the State's motion to transfer the case to the county court and remand the cause for further proceedings in the juvenile court.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.