IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF JOVANI L.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF JOVANI L., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

JOVANI L., APPELLANT.


Filed January 28, 2025.    No. A-24-674.


Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Affirmed.

Heather S. Colton, of Pollack & Ball, L.L.C., for appellant.

Patrick F. Condon, Lancaster County Attorney, and Haley Huson for appellee.


RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Jovani L. appeals from the order of the separate juvenile court of Lancaster County, which transferred his criminal case to the Lancaster County Court. Finding no abuse of discretion, we affirm.

## II. STATEMENT OF FACTS

On June 11, 2024, the State filed a petition in the juvenile court charging Jovani with two counts of robbery, one count of use of a deadly weapon to commit a felony, one count of possession of a stolen firearm, and one count of theft by unlawful taking, $5,000 or more, all either Class II or IIA felony offenses. The charges arose out of occurrences on June 8, 9, and 10. On June 11, the State also filed a motion to transfer to county court, as well as a motion for continued secure

- 1 -

detention. On the same day, the juvenile court entered an order placing Jovani in secure detention at the Lancaster County Juvenile Detention Center. On June 12, the court continued this detention. The hearing on the motion to transfer was set for June 24, however, on June 19, Jovani's counsel filed a motion to authorize an evaluation and continue the hearing on the motion to transfer, which motion was granted by the juvenile court. The court subsequently authorized Jovani to retain Dr. Stephanie Bruhn to conduct the evaluation of Jovani under the factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2024).

A hearing on the motion to transfer was held on August 27, 2024. Several exhibits were received in evidence, including: a compilation of police reports, Jovani's full pre-disposition investigation, certified copies of three previous juvenile court case files, an email from a police investigator regarding Jovani's affiliation with the "P-Block" gang, diversion eligibility requirements, and a CV and psychological evaluation from Bruhn regarding Jovani. Judicial notice was taken of the orders and pleadings in the case. In addition, the court heard testimony from Anna Towle, a specialized officer with Juvenile Probation. We summarize the evidence below.

Jovani, born in April 2009, was 15 years old at the time of the underlying occurrences. He was on probation under three separate juvenile court cases; JV22-685, JV23-145, and JV23-694. In JV22-685, Jovani was charged with one felony count of burglary from a vape shop occurring on July 18, 2022. He was initially released to the home of his mother and ordered to have no contact with Trevon G., who was also involved in the burglary. Jovani left home without permission, disabled his GPS transmitter, and was thereafter placed in secure detention. He ultimately was adjudicated to amended charges of first degree criminal trespass, theft by unlawful taking ($0-$500), and criminal mischief ($500-$1500), all misdemeanor level offenses.

While awaiting disposition on the above charges, Jovani was placed in Cedars Youth Shelter, but after causing property damage at Cedars on January 9, 2023, he was again placed in secure detention. As a result of the incident at Cedars, on February 13, Jovani was charged in JV23-145 with a misdemeanor count of criminal mischief ($0-$500). He was conditionally released to the home of his aunt, but he left her home without permission and was returned to secure detention. Another attempt to be placed with the aunt was unsuccessful due to Jovani tampering with his GPS monitor and leaving the aunt's home on April 29. The next day, Jovani was caught shoplifting at a local store and was charged in JV23-694. He was arrested on June 12 and placed in secure detention where he remained until August 25, at which time he was placed on probation in all three juvenile cases and placed at Provo Canyon School PRTF in Utah.

Jovani did well at the Provo school and was returned to his mother's home on March 15, 2024. The offenses in this case happened roughly 3 months later. In addition to Jovani, Trevon G., and two other juveniles were involved in the occurrences.

The police reports show that on June 8, 2024, Jovani and the other juveniles were allegedly involved in a robbery of a victim's wallet, phone, and vehicle. On June 9, Jovani and the other juveniles were allegedly involved in a vehicle theft. On June 10, Jovani and the other juveniles were allegedly involved in a robbery at a convenience store, and Jovani was alleged to have pointed a handgun at the store clerk. The juveniles ran from the store and while he was running from an officer, Jovani said he had a gun and was scared. When Jovani was eventually detained, a loaded 9mm handgun was found in his coat pocket.

Bruhn conducted a psychological evaluation of Jovani in August 2024, consisting of a clinical interview, and a review of juvenile court and probation documents, school records, and police reports. She performed the Millon Adolescent Clinical Inventory (MACI), the HARE Psychopathy Checklist: Youth Version (PCL:YV), and the Structured Assessment of Violence Risk Assessment (SAVRY). The results of the MACI suggested that Jovani is likely to perform best in a structured and predictable environment. Jovani's score on the PCL:YV showed that he exhibited a low level of characteristics consistent with the construct of psychopathy, although he scored high on impulsivity, unstable interpersonal relationships, serious criminal behavior, and serious violations of conditional release. On the overall SAVRY, Jovani presented a moderate level of risk for general community violence. Bruhn noted Jovani's previous diagnoses of Attention Deficit/Hyperactivity Disorder and Cannabis Use Disorder, which diagnoses she felt were appropriate. She also noted that based on Jovani's report of physical abuse and feelings of abandonment, a diagnosis of posttraumatic stress disorder was also warranted.

Bruhn stated that Jovani would benefit from participating in cognitive-behavioral treatment, noting that he has demonstrated some improvement with structured interventions in the past. Bruhn indicated that this treatment would need to continue as he moves from one placement to another, but indicated that this could be difficult due to a lack of structured sites and therapy options for adolescents in Nebraska. Bruhn recommended a structured environment for Jovani should the court determine that he should be detained. She noted treatment programs are available at the Youth Rehabilitation and Treatment Center (YRTC) and the Nebraska Correctional Youth Facility (NCYF).

Testimony was received from Towle, whose duties as a specialized officer with Juvenile Probation include supervising high-risk youth in the community. Towle began working with Jovani in the fall of 2022. Services utilized by probation for Jovani have included GPS monitoring, intensive family preservation, co-occurring evaluations, and drug testing. Towle indicated that Jovani had been detained several times, although that is not a placement option. Jovani has utilized the Crisis Stabilization Center (Cedars), he has been placed in a kinship option with his aunt, and he was placed at Provo Canyon School, a psychiatric residential treatment level facility. At this facility, he received therapy and was in a highly structured program in the locked campus. He did "really well there," exhibited a lot of improved behaviors, and was successfully discharged. After his discharge from Provo, Towle attempted to set up services for medication management and therapeutic services, however, Jovani did not attend therapy prior to the events that led to this case, due in part to communication and transportation issues. When asked if there are any services at this time that probation feels could be implemented to assist Jovani that have not been tried, Towle responded, "I would say YRTC." However, Towle indicated that she had not had much experience with the Kearney facility for males. She thought that the facility offered services such as educational programs and groups.

Towle had concerns about returning Jovani to his mother's care after his return from Provo as she had not really engaged in any services through probation during the previous 2 years and she does not provide structure in her home. Towle believed that Jovani would be able to succeed in a structured environment and that YRTC would be able to provide the needed structure.

On August 30, 2024, the juvenile court entered an order transferring the case to the county court. In its lengthy order, the juvenile court thoroughly analyzed each of the statutory factors and

found that most of the factors weighed in favor of transferring the case. We will further discuss each of these factors in our analysis below.

## III. ASSIGNMENT OF ERROR

Jovani assigns that the juvenile court erred in transferring his case to the county court.

## IV. STANDARD OF REVIEW

An appellate court reviews a juvenile court's decision to transfer a juvenile offender's case to county court or district court de novo on the record for an abuse of discretion. *In re Interest of Steven S.*, 299 Neb. 447, 908 N.W.2d 391 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023).

## V. ANALYSIS

### 1. LEGAL FRAMEWORK

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, all of the allegations against Jovani put him within the latter category of juvenile offenders, and the State initially filed the charges against Jovani in the juvenile court.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, the county attorney may move to transfer the matter from juvenile court to county or district court. Neb. Rev. Stat. § 43-274(5)(a) (Reissue 2016). When the prosecution seeks to transfer a juvenile offender's case to criminal court, the juvenile court must retain the matter unless a preponderance of the evidence shows that the proceeding should be transferred to the county court or district court. The prosecution has the burden by a preponderance of the evidence to show why such proceeding should be transferred. *In re Interest of William E.*, 29 Neb. App. 44, 950 N.W.2d 392 (2020).

In the instant case, when the State moved to transfer the case to county court, the juvenile court conducted a hearing pursuant to § 43-274(5)(a). In determining whether a case should be transferred from juvenile court to criminal court, a juvenile court should consider those factors set forth in § 43-276; there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor. See *In re Interest of Steven S., supra*. Section 43-276(1) sets forth the following factors for consideration:

> (a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h)

consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

In the context of § 43-276, factors considered neutral or not applicable are equivalent to factors that favor jurisdiction in the juvenile court. See *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023).

## 2. JUVENILE COURT FINDINGS

The juvenile court made the following findings under § 43-276:

### (a) Type of Treatment to Which Juvenile Would Be Amenable

The juvenile court found that Jovani tends to do better when he has significant structure in place, referencing his psychiatric residential treatment in Provo, his placement at the Cedars shelter (until he damaged property), and his secured detentions. However, the court noted that Jovani does not do well when placed in a family home environment. Although Jovani had never been placed at YRTC or in other programs, the court found that there was no evidence that such placement would differ from any of his prior placements or that he would be amenable to any of these treatments. The court also noted that placement at NCYF is not available through the juvenile court.

The juvenile court also recited that Jovani had already been involved in outpatient therapy, in-home intensive family preservation, and psychiatric residential treatment. The court questioned whether any of Dr. Bruhn's recommendations were services that had not already been implemented in one form or another. The court concluded that this factor weighed in favor of transferring the case to county court.

### (b) Evidence That Alleged Offenses Included Violence

The juvenile court found that "without a doubt," the alleged offenses included violence and could easily have resulted in someone getting killed. The court noted that it was Jovani who allegedly threateningly pointed a loaded handgun at the 71-year-old clerk at the convenience store. When Jovani was apprehended, he had the handgun in his coat pocket with a loaded magazine and a round in the chamber. The court concluded that this factor weighed in favor of transferring the case to county court.

#### (c) Motivation for Commission of Offenses

Although the motivation for committing the offenses was not known for sure, the juvenile court found that there was no reasonable argument that Jovani's motivation was well-intended. The court found that this factor weighed in favor of transferring the case to county court.

#### (d) Age of Juvenile and Age and Circumstances
#### of Any Others Involved in Offense

Jovani was 15 years of age at the time of the offenses, which the juvenile court noted would tend to weigh in favor of the case remaining in juvenile court. However, the court found that Jovani's continued association with at least one peer with whom he has been in significant trouble in the past and with whom he was ordered not to have contact weighed in favor of transferring the case to county court.

#### (e) Previous History of Juvenile, Including Any Previous
#### Convictions or Prior Juvenile Court Adjudication

The juvenile court's order contained over 7 pages detailing Jovani's extensive history in juvenile court dating back to July 2022. The court concluded that his extensive history clearly weighs strongly in favor of transferring the case to county court.

#### (f) Best Interests of Juvenile

The juvenile court concluded that this factor would seem to weigh in favor of the juvenile court retaining jurisdiction as Jovani would avoid a potential felony conviction and other civil disabilities.

#### (g) Consideration of Public Safety

The juvenile court noted the crimes that Jovani has committed in the past; including breaking into private property, damaging property, shoplifting; and the crimes that he has been charged with in the current case. The court referenced Jovani's significant gang ties and his report to the probation office that he is the leader of his gang. The court concluded that this factor weighed in favor of transfer.

#### (h) Consideration of Juvenile's Ability to Appreciate
#### Nature and Seriousness of Conduct

Based on Jovani's continuing involvement in the juvenile court and having allegedly used a loaded handgun in the current matter, the court found that he does not seem to have any consideration for the nature and seriousness of his conduct or how dangerous his conduct has become. As a result, the court found that this factor weighed in favor of the case being transferred to county court.

#### (i) Whether Juvenile's Best Interests and Security of Public Require
#### Continued Detention or Supervision for Period Beyond Minority

The juvenile court noted that Jovani was currently charged with three offenses that are Class II felonies, and two offenses that are Class IIA felonies. In finding that this factor weighed in favor of transferring the case, the court stated:

Given how serious the juvenile's current charges are, and given that they took place so soon after returning from a very structured out of home placement that he 'successfully completed', it is very evident that the juvenile is going to need on-going supervision beyond his 19th birthday, if for no other reason but to ensure the [security] of the public.

### (j) Whether Victim Agrees to Participate in Mediation

Because there was no evidence presented in this area, the juvenile court found this factor neither weighed in favor of transfer nor of the case remaining in juvenile court.

### (k) Whether There Is Pretrial Diversion Program

The juvenile court found that Jovani was not eligible for the diversion program given his prior law violations for which he was on probation at the time of the alleged offenses. Accordingly, the court concluded that this factor weighed in favor of transferring the case.

### (l) Whether Juvenile Has Been Convicted of or Has Acknowledged Unauthorized Possession of Firearm

The juvenile court noted that before he was taken into custody by law enforcement, Jovani told police that he had a gun in his possession, and once he was taken into custody, a 9mm handgun was located in his coat pocket. The court concluded that this factor weighed in favor of transferring the case to county court.

### (m) Whether Order Has Been Issued Concerning Juvenile's Amenability to Rehabilitative Services That Can Be Provided Under Nebraska Juvenile Code

Because such an order has not been entered, the juvenile court found that this factor weighed in favor of the case remaining in juvenile court.

### (n) Whether Juvenile Is Criminal Street Gang Member

The juvenile court noted that Jovani is a member of the "P-Block" gang and continues to associate with other gang members; thus, the court concluded that this factor weighs in favor of transferring the case.

### (o) Such Other Matters as Parties Deem Relevant

The juvenile court stated that "one of the loudest" arguments made in opposition to the motion to transfer was the failure of Jovani's mother to provide a structured living environment for Jovani and her failure to be consistently engaged in his case and with necessary services. While the court found her conduct and lack of involvement to be very troubling, there was no evidence presented as to how to adequately address the mother's shortcomings if the case remains in juvenile court. The court also noted the two opportunities for Jovani to be placed in the community with his aunt, however, both times Jovani's conduct resulted in placement back in detention. The court concluded that the failure of Jovani's mother cannot alone serve as the basis for the case remaining in juvenile court.

The juvenile court concluded that there were no other options available in juvenile court that have not already been tried that have a realistic or reasonable likelihood of success. The court found that the State had proven by a preponderance of the evidence that the case should be transferred to county court; the motion to transfer was sustained.

### 3. JOVANI'S ARGUMENT

Jovani argues that the juvenile court did not accord proper weight to several important factors favoring retention; namely, his amenability to treatment at YRTC and other structured placements, his mother's failure to provide structure and support, his best interests, his age, and the diversion and restorative justice factors.

The court does not need to resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more of less weight is assigned to each specific factor. See *State v. Stevens*, 290 Neb. 460, 860 N.W.2d 717 (2015). Rather, it is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. The same reasoning is applied in the context of a motion to transfer from juvenile court. *Id*. See, also, *State v. Esai P.*, 28 Neb. App. 226, 942 N.W.2d 416 (2020). With these principles in mind, we turn to Jovani's arguments.

First, Jovani challenges the juvenile court's finding regarding his amenability to treatment. In her evaluation, Bruhn recommended that Jovani be placed in an environment where he can receive treatment rather than simply being detained and away from society. She stated that treatment programs are available at YRTC. Towle also testified that Jovani would do better in a structured environment such as YRTC. However, neither Bruhn nor Towle provided any details about the type of treatment programs that Jovani would be provided at YRTC or how any programs or services would provide Jovani with the rehabilitation that he obviously needs. The only explanation for the recommendation of placement at YRTC is that Jovani needs structure.

Jovani has been afforded community-based services without success. He was recently placed at the Provo facility for rehabilitation and treatment. Although he did well while confined there, upon his return to Nebraska, he seemingly quickly resumed his criminal activity. As noted by the juvenile court, while Jovani may be amenable to a second attempt at rehabilitation and treatment, his track record suggests that he may resume engaging in criminal activity upon his discharge.

We find that the juvenile court properly weighed Jovani's amenability to treatment in determining that this factor weighed in favor of transferring the case to county court.

Jovani next takes issue with the juvenile court's lack of consideration of his mother's failure to provide proper structure and engagement. As we set forth above, the juvenile court did in fact consider this argument in its analysis of the motion. We agree with the juvenile court that the mother's failures, while very unfortunate, were not a sufficient factor to retain jurisdiction in the juvenile court. Jovani was provided with an alternative family placement with his aunt, which placement ended because of Jovani's actions in failing to abide by the conditions of his probation and by running away. Even if the mother's failures were a sufficient factor to retain jurisdiction in the juvenile court, it was outweighed by the other factors which supported transfer.

Jovani further argues that the juvenile court failed to properly weigh his age and best interests. On the contrary, the juvenile court did find that Jovani's age and best interests would

favor retaining the case in juvenile court. Nevertheless, the court concluded that numerous remaining factors clearly favored transfer.

In our de novo review, we cannot say that the juvenile court abused its discretion in granting the motion to transfer the case to county court. The seriousness of, and violence involved in the alleged offenses, including the use of a loaded handgun; Jovani's extensive prior criminal and juvenile court history; his continued behaviors following completion of the treatment program in Provo; his participation in a gang; the need for protection of the public; and the need for secure detention of Jovani beyond his minority; all overwhelmingly supported the transfer of the case to county court.

## VI. CONCLUSION

The juvenile court did not abuse its discretion in granting the State's motion to transfer this case to county court.

AFFIRMED.